Please rise. Illinois Public Court Court of Appeals is now in session. Good morning, all. You may be seated. Call the first case. 15-1297, People v. Howell Park. Okay, would the lawyers who are going to argue the case please approach the bench and introduce yourself to the court. Your Honors, my name is Maria Harrigan with the State Appellate Defender. I'll be representing Mr. Carter in this case. Good morning, Your Honors. I'm Heather Flarenkrog, and I'm representing the people of the State of Illinois. Okay, and how much time do you want for rebuttal? Maybe two or three minutes for rebuttal. Okay. All right, let's proceed. Your Honors, this case presents the question of whether Antonio McDowell's and Vaughn Peters' accounts of the gang shooting constitute newly discovered evidence, which would probably change the results on retrial. We argue that under People v. Ortiz and People v. Coleman, the accounts of these new witnesses place the trial evidence in a new light sufficient to meet this threshold. First, Mr. Counsel, what do you make of the credibility findings by the trial court? The trial court did make credibility findings. However, her credibility findings were based on speculation as to what happens among gangs, what the communication would be between gang members who are in prison or in lockup and who are out on the street, the fear that gang members might have of turning another rival or same gang member into the police, and the fact that it's fairly credible that gang members just don't speak to the police, which is one of the reasons that these two witnesses said that they would not come forward. So her credibility findings are against the manifest way of the evidence, and secondly, she did not take them into account in the light of the evidence that was induced at trial. Those witnesses were not very credible.  At first, he did not report. He said he had known the shot who fired that day, which is credible. He said he ducked under the dash. He was in the car. There were shots being fired at him. Two days later, he said he reported to the police because he decided to drop his revenge plot. But he had an interest. He could have led this faction of the gang. He could have been the permanent replacement for Mr. Carter. So he had a motive to blame Carter. Counsel, at the third stage hearing, didn't these witnesses say that they didn't know that their leader, Mr. Carter, had been charged with murder? Wasn't that one of the things that they said? They didn't know about it. One of the reasons, they said that they knew he had been arrested. They did not know he had been convicted. They assumed that he wouldn't be because everyone knew he wasn't out there. And then they shortly got arrested and caught up in the justice system with their own cases. So you cannot for certain say that they were lying when they said that because we don't know what the communication would be in prison, out of prison, in the lockup with gang members who are outside. In Ortiz, was there an issue about the credibility of the third stage witnesses? There were no credibility findings made in Ortiz. However, again, the credibility findings the judge made here, we contend were against the manifest way of the evidence. And Ortiz is very similar in other respects. It was a 10-year time frame before the person returned. There were recanting witnesses. We had one recanting witness in this case. There was credibility problems with the witnesses who did testify. Lots of threats were made or not made. So it was a very similar situation that we have here. And in that case, it was remanded for a new trial. In Ortiz, was the witness incarcerated? The witness moved away. What? The witness who came forward had moved to Wisconsin. So that was his. He just left the area. He wasn't incarcerated. He was not incarcerated. Okay. Right. The witnesses here were incarcerated, but that witness was not. Okay. That witness had left. He said he left the gang and he left the state. And you don't believe that people play games in prisons, gang members, when there are large sentences they may mislead or misrepresent or maybe even lie? Again, Your Honor, people may lie, but the inferences or the alleged inferences that the circuit court made here went beyond that. It went to speculation about what she thought. That was standard of review here. Standard of review was against the manifest way of the evidence. Oh, it's not the manifestly erroneous? Manifestly erroneous. I'm sorry. That was the standard of review. What about the difference between manifest erroneous and standard of review that you just told me? Yeah. That was the standard of review for that incident. Do you think we could find that this judge was manifestly erroneous? Is that what you think? I believe so, Your Honor, because she failed to take into account the testimony of these new witnesses in light of the trial witness testimony. These weren't choir boys who testified at trial. They had a lot of their own credibility problems. They changed their stories. They recanted. Randolph had this. In a public court, as a reviewing court, make credibility determinations. Make credibility determinations? Yes. What Your Honor can do is determine that her credibility determinations were erroneous based on the fact that she did not apply the right standard. Manifestly erroneous. Right. Not just erroneous. Exactly. Because she did not consider the new evidence in light of the old evidence. We had Randolph at trial who seemed most interested in just getting a deal on his own charges. He was in a rival gang. Do you have a case that talks about that? That tells us that we could do that? That tells you? Well, the standard. The standard that shows that when a judge makes a credibility determination, making observations based on testimony, believes one witness over another, that we could say that that's manifestly erroneous. But in this situation you can because the circuit court did not consider the new evidence as it would have affected the trial evidence. She considered it as this was not exonerating. So she applied the wrong standard in making the credibility determination. Okay. So Your Honors do have the authority to do that. So much of what you're saying is that it's not that the trial judge listened to specific things said by these witnesses and checked out their demeanor and their tone of voice and inflection so much as she sort of more generally said how could they have waited this long? It's something that doesn't necessarily speak to the kind of things that we can't consider as well as they can, but the things that we could look at. Correct. Is that what I'm saying? That's what I'm saying. That she seemed, if you look at her written order, she seemed to just in her, had these other ideas of how this should have happened, that they should have come forward right away, that they were, you know, and it's pretty clear he might not have even known that they were there because he wasn't there. He never made any admissions. He steadfastly maintained that he was at his girlfriend's house, recovering from serious injuries from a shooting five months before. Is that how he testified at the third stage hearing? That's how he testified at the third stage hearing. But he also, the staffs of his injuries and what happened. I'm sorry, didn't he say he was home? Did he conflict with Peters on that point? The problem with that is he had been living with his girlfriend since he came home from the hospital in May, so home for him could have been his girlfriend. He wasn't staying at home. He needed a lot of help. He was limping. He had hand problems. So home, the word home could have meant his girlfriend's house. So that point she also put in her order, which is a misinterpretation. And the injuries, Carter's injuries were testified to about by the witnesses. They corroborated that, that he was severely injured. And again, we're not asking your honors to find this Mr. Carter incident. That's not what the circuit court had the responsibility to do either. Under the language in Coleman, in Ortiz, we were asking about what another jury would do with the new evidence and the old evidence. And taken together, in all probability, it is our contention that the results would be different on retrial. Your honors have no further questions? Do you want to save some time for rebuttal? Yes, thank you. Good morning, your honors. May it please the court. Heather Farncote here on behalf of the people of the state of Illinois. Your honors, it is petitioner's burden to show that the circuit court's decision here was manifestly erroneous. And this 35-page order, this detailed order where the circuit court took the time to discuss the credibility of both of these witnesses that testified at the evidentiary hearing, and then she went on and took that new evidence and scrutinized it together with the trial record and went through each and every witness who testified at trial. There is no way that any claim that she was speculative or applying the wrong standard could possibly be supported by counsel. Would you agree that at least in part that's what she was doing? She was asking questions about, well, why would they have waited this long? I can't believe they wouldn't have known about this if they were all in the same gang. Those kind of things. I mean, those aren't really, I mean, that's something you could have thought of before the hearing began, right? I absolutely disagree. In her order, the circuit court stated when discussing the credibility problems with these two witnesses first, she didn't believe there were reasons for not coming forward because there was a huge gang warfare going on between these two factions of this gang. These two men were in the same gang with defendant and claimed they were there the day of the shooting, but they somehow didn't know he was arrested for the shooting. And she said very plainly in her order, that defies common logic, that defies human experience, that they wouldn't have known what was happening in their own gang community when they lived and worked together with this defendant day in and day out until 10 years later when they see him in jail. But she went beyond that. She went beyond finding that their reason for not coming forward was incredible. She also found that their testimony regarding the shooting was not credible. So it wasn't just about their reason for coming forward. Even if we say they had a great reason for coming forward, or they had a plausible reason for waiting to come forward, their description of the shooting defied logic, was improbable in her opinion. After watching them testify, and I might add watching Petitioner testify too, he testified that this gang was about peacefulness, that there was no violence in this gang, the Undertaker Vice Lords. His testimony was completely ridiculous, and she was watching and listening and gave detailed credibility determinations. So you would say that the testimony was not consistent? The Petitioner's testimony was not consistent with the testimony that happened at trial. And the counsels asking this court to find that somehow the credibility of the witnesses at trial should be an issue today is obviously not the case. Those witnesses were found to be credible by the trial court. Certainly they were all gang members, and the trial court was a bench trial, made those credibility determinations that Kenneth Beecham was credible, that Alan Williams, the victim who was in the car and saw a defendant hold up a gun and shoot at him from 15 feet away was credible, and that Randolph, Tyrone Randolph's initial grand jury testimony and written statements were entered as substantive evidence and that they were credible. Randolph recanted his testimony, his grand jury testimony at trial, only to say I wasn't there, I don't know a defendant, I don't know anything about this. There's nothing in these two new witnesses, McDowell and Peters, that brings Randolph, that corroborates Randolph or brings that back to life in any way. These are two different issues. The testimony of McDowell and Peters was assessed by the circuit court properly, and then she went back through each and every witness, and as this court has held, scrutinized the trial court record in terms of, in order to make a decision as to whether there could be a different result on retrial. And she found there could not. There is no case saying that this court can look at what the circuit court did and make new credibility determinations. The circuit court was in the best position to make those determinations, and to find that this 35-page order is in any way manifestly erroneous is just not supported. Counsel's argument is just not supported on that. I don't know if there's any other, do you have any questions of me? No? Thank you, Your Honors. We ask that this court affirm the circuit court's decision. Thank you so much. Just a few points, Your Honors. Again, when the circuit court wrote her order and talked about the witnesses at trial, she relied on previous courts' ruling that they were credible. However, those courts did not have the benefit of these witnesses, who testified completely differently. McDowell and Peters did corroborate Randolph's trial testimony, and they said he wasn't there and he wouldn't have been because he was in a rival gang and it would have been extremely dangerous for him to have been on that corner that night. Besides, Randolph, from all accounts, was most interested in obtaining a deal for himself. So he changed his story several times. We don't need petitioner's testimony that the gangs aren't violent in order, for Your Honors, to reverse the finding below. Just looking at these two witnesses' testimony, in conjunction with how they would have shed light on the witnesses that testified at trial, that is all you need to look at to determine that the court below's order should be reversed. Did the witnesses testify that they were not aware that he had been arrested? No. Actually, at least one of the witnesses said that they knew he had been arrested, but by the time Carter went to trial, that particular witness had been arrested and was involved in the justice system himself, and he assumed that even though he was arrested, he would never be charged or convicted because he didn't do it, he wasn't there, and the police would find that out. So if Your Honors have no further questions, we request a remand for a new trial with the newly discovered evidence in this case. Thank you. Thank you. Well, I want to thank you guys for well-written briefs and good arguments, and I want you to know that Justice McBride could not be here today, but she will be with this panel when we deliberate on this case, and she will hear the arguments that were made today, and will take this case under advisement. Thank you very much. Thank you.